2010 Ark. 7

**Lloyal Willie BRYANT, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1033.**

Supreme Court of Arkansas.

Jan. 14, 2010.

Michael Scott Hodson, Wendy R. Howerton, Fayetteville, AR, for appellant.

Eileen W. Harrison, Little Rock, AR, for appellee.

JIM GUNTER, Justice.

Appellant Lloyal Willie Bryant appeals his conviction of two counts of rape and two counts of second-degree sexual assault for which he was sentenced to life plus forty years to run concurrently. On appeal, he asserts that the trial court erred (1) in denying his motion to suppress statements he made during interrogation; (2) in admitting into evidence letters he wrote to his wife while incarcerated; (3) in allowing testimony regarding a prior sexual-assault offense; and (4) in denying his motion for directed verdict. Because this is a criminal appeal in which life imprisonment has been imposed, this court has jurisdiction under Ark. Sup. Ct. R. 1–2(a)(2). We affirm on all points.

On April 28, 2007, the Boone County Sheriff's Office was called to appellant's mobile home in Lead Hill, where he lived with his wife and stepchildren, to investigate a domestic disturbance. During that investigation, five-year-old C.H. alleged

that appellant had sexually abused him. Appellant was arrested, and two days later Detective Troy Walker interviewed him regarding the allegations of sexual abuse. Following that interview, appellant was charged with two counts each of rape and sexual assault in the second degree.

Prior to trial, appellant filed several motions, including: (1) a motion to suppress his statement made to Detective Walker alleging that it was involuntary and coerced in violation of his constitutional rights; (2) a motion in limine to exclude letters appellant wrote to his wife while incarcerated because they were more prejudicial than probative under Arkansas Rule of Evidence 403; (3) a motion in limine pursuant to Rule 609(a) to prevent the State from using a prior sexual-assault conviction to impeach appellant because the prior conviction was more prejudicial than probative; and (4) a motion in limine based on Arkansas Rules of Evidence 403 and 404(b) to exclude testimony regarding appellant's prior crimes as more prejudicial than probative and because the introduction of the prior conviction was to show appellant's bad character.[1]

Appellant's trial began on April 28, 2008. His twenty-one-year-old stepdaughter, Brittany Bailey, testified that she was at the home the day the police arrested appellant. She stated that appellant was intoxicated that day and that he was arguing with her sister Belinda. Appellant had accused Belinda of molesting her brother, C.H., and Brittany explained that the argument escalated and that appellant "spit in her face." Brittany stated that she talked to C.H. alone and that his story was inconsistent with appellant's version. She stated that C.H. indicated that appellant had been the abuser.

C.H., at the time six years old, testified that he lived with appellant and thought of him as a father. C.H. stated that while he lived with appellant—who C.H. identified as the defendant sitting in the courtroom—appellant touched him inappropriately on his "wiener" and "bottom." C.H. accurately located these areas on a diagram of body parts. He stated that appellant touched him with his hand, his arm, and his mouth. C.H. testified that appellant "sucked on" his "wiener." C.H. also said that he was forced to put appellant's penis in his mouth and that "white stuff came out."

The State called Detective Walker to testify regarding his interrogation of appellant. Appellant objected to the introduction of the confession on the basis that the detective only mirandized appellant once during the six-hour interview and that when appellant indicated he wished to cease the interview, the detective did not honor that request. The court stated that it had "ruled on it, so I'll just show it as a continuing objection."

Detective Walker testified that prior to the interrogation, he read appellant his

---

1. Although the record demonstrates that several pre-trial hearings were held, including a hearing on the suppression issue on January 18, 2008, the record is devoid of any reference, either orally or in writing, that the court ever made a ruling prior to trial on any of the appellant's pre-trial motions. Regardless, appellant objected at trial each time the State proposed to introduce testimony or evidence that he now claims on appeal was admitted in error. This court has held that where a judge does not make a final determinative ruling on a party's pre-trial motion, the party must object at trial to the evidence in question in order to raise the issue on appeal. *See Vaughn v. State*, 338 Ark. 220, 992 S.W.2d 785 (1999); *Campbell v. State*, 300 Ark. 606, 780 S.W.2d 567 (1989). Because appellant objected at trial to the introduction of appellant's statement, the letters, and the evidence of the appellant's prior bad acts, and it is clear from the record that the court denied those objections at the trial, this court can rule on the merits of those issues.

rights, using the form required by the sheriff's office, and that appellant indicated he could read, write, and had received an equivalency diploma after finishing the tenth grade. Detective Walker noted that the interview began just before noon and lasted approximately six hours, with three or four breaks during its course. Upon questioning appellant regarding C.H.'s allegations, appellant's response was that the child was lying. When the detective asked appellant about specific events, he stated that he did not remember and continued to deny he abused the child. After Detective Walker and appellant viewed the videotaped interview of C.H., appellant said that he had never touched C.H. and that if he had been abused, someone else did it. The interrogation then turned to appellant's excessive drinking, and Detective Walker asked appellant if he could have inappropriately touched C.H. while he was drunk. Appellant stated that "[i]f it happened, I don't remember none of it." Appellant admitted that he was an alcoholic and that if C.H. was telling the truth, "I don't remember if it did happen." Appellant also expressed that "[i]t's tearing me up right now. It's hurts [sic] me to know that I could do something like that with him." The detective then questioned appellant about his history of being sexually abused by his own father. Appellant admitted that his father had molested him and that he occasionally dreamt about the abuse. At one point, appellant stated that "I'm not denying it didn't happen, it— more than likely, it has happened but I [inaudible] dreams about my dad." Thereafter, the following colloquy occurred:

DETECTIVE WALKER: We don't have to wait Willie.

APPELLANT: Troy, I don't remember it.

DETECTIVE WALKER: Yes, you do.

APPELLANT: No, I don't.

DETECTIVE WALKER: Yes, you do. Stop, I'm not going to hear it.

APPELLANT: Okay, then we're through with [inaudible] this interview then.

DETECTIVE WALKER: Be quiet.

APPELLANT: I can't answer it, I can't admit something . . .

DETECTIVE WALKER: He needs your support Willie.

APPELLANT: I know and I'm . . .

Detective Walker continued to question appellant, and he continued to deny the allegations. Detective Walker described appellant's demeanor throughout the interview as "stoic," showing "no emotion," and like a "statue." The detective stated that appellant never seemed offended, even when the detective used profanity to attempt to elicit an emotional response. Detective Walker noticed tears in appellant's eyes at one point during the discussion of his own abuse by his father.

A deputy with the Boone County Sheriff's Office testified that he served as jailer while appellant was incarcerated prior to trial. The deputy testified that appellant wrote two letters to his wife. Brittany Bailey was recalled to testify regarding letters received at her residence for her mother. She stated that she had seen appellant's handwriting several times during the three years she lived with him. She indicated that she had no doubt the letters were from appellant. Appellant objected to the introduction of the letters on the basis that they were more prejudicial than probative under Rule 403 and that the State had failed to lay a proper foundation. The court allowed the letters but noted appellant's continuing objection. Brittany testified that in one of the letters, appellant wrote that "God, I wish I could turn back this, turn back time but I can't. Everything happens for a reason. This has opened up my eyes to see where I'm going. The one I need to show is [C.H.].

If I did touch him." He also indicated in the letter that when he got out the family should move to Missouri where "DHS don't follow you."

Thirteen-year-old C.L. was also called to testify. He stated that appellant's wife babysat him when he was younger and that during that time, appellant touched him inappropriately. C.L. indicated that during the time of the abuse, he often stayed the night at appellant's home and that he spent significant time with appellant. C.L. described how appellant "would mess with our penises and our butts. He would play with our penises. He would feel our butts and put his finger in it." He said that it happened more than once and that appellant "put his penis on us and inside our butts." C.L. stated that he touched appellant's penis and "semen came out." C.L. testified that appellant was normally intoxicated during the abuse. C.L.'s mother testified that her son's allegations were investigated and that appellant pled guilty and received nine months' incarceration. Appellant objected to the testimony on the basis of Rules 404(b) and 403 as highly inflammable. He maintained that the rape charge was a "strict liability" crime and that the State had enough proof through C.H.'s testimony alone to convict on the rape and sexual-assault charges so that it did not need the additional testimony. The State responded that whether there was adequate proof was a decision for the jury. The court found that it had previously ruled on the admissibility of the testimony and that it would be allowed.

The State rested, and appellant chose not to testify in his own defense. Appellant moved for directed verdict on the basis that the State failed to offer any evidence to show sexual gratification, which appellant argues was necessary to prove rape and second-degree sexual assault; that there was no physical evidence of abuse; that C.H.'s testimony was not credible nor sufficient alone to sustain a conviction; that the State failed to prove two counts of rape and two counts of sexual assault rather than a continuing course of conduct; that appellant was forced to forfeit an opportunity to testify in his own defense else be impeached by his prior offense; and that if sentenced as a habitual rape offender, appellant would receive a life sentence without ever addressing the jury. The court denied the motion. The jury convicted appellant on two counts each of rape and sexual assault in the second degree. Appellant filed a timely notice of appeal from the judgment and commitment order.

### I. *Sufficiency of the Evidence*

■ Appellant argues that the trial court erred in denying his motion for directed verdict. Specifically, he asserts that the evidence was insufficient to prove rape or sexual assault because the State failed to present any evidence other than the testimony of C.H. to support the allegations. Alternatively, appellant contends that he was incorrectly charged with two counts each of rape and second-degree sexual assault. Although appellant presents his directed-verdict argument as his final point on appeal, we are required to address it first due to double-jeopardy concerns. *Campbell v. State*, 2009 Ark. 540, 354 S.W.3d 41.

This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Gwathney v. State*, 2009 Ark. 544, —— S.W.3d ——. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State, consider only the evidence that supports the verdict, and we affirm if substantial evidence exists to support the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character that it will, with rea-

sonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Campbell, supra.*

A person commits rape if he engages in sexual intercourse or deviate sexual activity with a person less than fourteen years old. Ark.Code Ann. § 5–14–103(a)(3)(A) (Supp.2009). "Deviate sexual activity" means any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another or by the penetration, however slight, of the anus of a person by any body member or foreign instrument manipulated by another person. Ark.Code Ann. § 5–14–101 (Supp.2009). A person commits sexual assault in the second degree when he is over the age of eighteen and engages in sexual contact with a person less than fourteen years old who is not his spouse. Ark.Code Ann. § 5–14–125 (Supp. 2009).

 This court has consistently held that the testimony of a rape victim, standing alone, is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Rohrbach v. State,* 374 Ark. 271, 287 S.W.3d 590 (2008); *see also Jones v. State,* 300 Ark. 565, 780 S.W.2d 556 (1989) (holding that testimony of child victim, standing alone, was sufficient to sustain rape conviction where victim clearly identified defendant and testified to the acts). Likewise, the victim's testimony need not be corroborated to demonstrate sufficient evidence of first-degree sexual abuse. *Rains v. State,* 329 Ark. 607, 953 S.W.2d 48 (1997). To the extent that there may be inconsistencies in the victim's testimony, this is a matter of credibility for the jury to resolve. *Id.* In cases of sexual abuse, it may be assumed that the defendant had sexual contact with the victim for the purpose of sexual gratification, and it is not necessary for the State to directly

prove that he was so motivated. *Id.* It is similarly not necessary for the State to prove specifically when and where each act of rape or sexual contact occurred, as time is not an essential element of the crimes. *Id.* Furthermore, rape is not defined as a continuing offense; rather, it is a single crime that may be committed by either engaging in sexual intercourse or deviate sexual activity with, as in this case, another person who is less than fourteen years of age. *Id.* Where the victim testifies to multiple acts of rape of a different nature, separated in a point of time, there is no continuing offense, as a "separate impulse was necessary for the commission of each offense." *Tarry v. State,* 289 Ark. 193, 195, 710 S.W.2d 202, 203 (1986); *see also Small v. State,* 371 Ark. 244, 264 S.W.3d 512 (2007) (holding that although the acts all occurred within the same night, they each involved a separate impulse and were separate offenses).

 Here, C.H. clearly identified appellant as the perpetrator and testified that appellant engaged in several different acts of a sexual nature, including appellant "sucking" on C.H.'s "wiener," appellant placing his penis in C.H.'s mouth, and appellant touching C.H. on his "wiener" and bottom. Pursuant to our case law, C.H.'s testimony alone supported appellant's conviction for rape and sexual assault. Moreover, C.H.'s testimony illustrated that there were several different actions of sexual assault and rape—acts that can each be separated in time as involving distinct impulses where appellant touched C.H. on his penis and bottom and where appellant sought sexual gratification by performing sexual acts on C.H. and then sought sexual gratification by forcing C.H. to perform sexual acts on appellant. Therefore, we affirm on this point because there was sufficient evidence for the jury to convict appellant of two counts

each of rape and second-degree sexual assault.

## II. *Suppression of Statement*

Appellant makes two arguments with regard to the suppression of statements he made during custodial interrogation. First, he argues that the trial court should have excluded those statements because he did not knowingly, voluntarily, and freely waive his rights. Specifically, he maintains that due to the length of the interrogation and verbal abuse by the detective, any statement made by appellant was not voluntary. Second, appellant contends that any incriminating statements he made after he asked to stop the interview but was rebuked by the detective should have been suppressed.

■ A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). In *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003), we clarified the appropriate standard of review for cases involving a trial court's ruling on the voluntariness of a confession—we make an independent determination based upon the totality of the circumstances. We review the trial court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by this court. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

■ Appellant's first sub-point regarding suppression pertains to voluntariness and waiver. In support of his argument, he points to the following facts: he was interviewed while in custody and was not free to leave; he was mirandized only at the beginning of the six-hour interrogation with only one break; he was not well-educated; and the detective yelled at appellant during the interrogation and called him "son of a bitch," "lying bastard," and "sack of shit." Appellant asserts that due to the length of the interrogation and his low level of education, Detective Walker should have re-mirandized appellant to ensure that any statement was voluntary. Appellant also contends that the verbal abuse by the detective, as well as questions designed to elicit an emotional response from appellant, created a coercive environment.

The State responds and maintains that appellant had a GED diploma and demonstrated he could read and write by reading aloud from the written waiver. The State also notes that neither the length of the interview nor the detective's use of profanity seemed to elicit any response from appellant and that there was no evidence that his will was overborne by those factors.

■ In order to determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, this court looks to see if the statement was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006). To make this determination, we review the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id.* Again, we will reverse a circuit court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id.*

Furthermore, we have stated that there is no constitutional requirement that a sus-

pect be warned of his Miranda rights each time he is questioned. Williams v. State, 363 Ark. 395, 214 S.W.3d 829 (2005). There is likewise no mechanical formula for measuring the longest permissible interval between the last warning and the confession. Id. Miranda warnings need only be repeated when the circumstances have changed so seriously that the accused's answers are no longer voluntary, or the accused is no longer making a knowing and intelligent relinquishment or abandonment of his rights. Id. Important considerations are the length of time that has elapsed between the Miranda warnings and the confession and the number of prior warnings. Id. An additional consideration is whether the accused initiated the second interrogation. Id.

We are satisfied that the circuit court did not err in allowing appellant's custodial statements into evidence. Detective Walker advised appellant of his constitutional rights in writing and appellant signed the waiver form. The entire interview took approximately six hours in a single day. We have held that a defendant's constitutional rights were not violated where twenty-two hours elapsed between the Miranda warning and the confession and also where three days had elapsed. See Williams, 363 Ark. at 409, 214 S.W.3d at 837; Barnes v. State, 281 Ark. 489, 665 S.W.2d 263 (1984). Moreover, there was no evidence that the length of the interview or the detective's questioning style overrode appellant's will and coerced him into incriminating himself. Rather, the evidence suggests otherwise—that appellant stayed calm and collected throughout the interview. Furthermore, the detective's use of profanity was minimal and not patently offensive. Under the totality of the circumstances, we cannot say that the circuit court clearly erred in refusing to suppress the statement on this basis.

Appellant's second sub-point with regard to suppression is that any comments he made after he asked to cease the interview should have been suppressed because they were taken in violation of his constitutional rights. A person subject to custodial interrogation must first be informed of his right to remain silent and right to counsel under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements improperly taken after the invocation of the right to remain silent or the right to counsel must be excluded from the State's case in chief to ensure compliance with the dictates of Miranda. See Michigan v. Harvey, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473–74, 86 S.Ct. 1602; see also Ark. R.Crim. P. 4.5 (2009). An indication that a defendant wishes to remain silent is an invocation of his Miranda rights. Robinson v. State, 373 Ark. 305, 283 S.W.3d 558 (2008). Once the right to remain silent is invoked, it must be scrupulously honored. Id. The meaning of "scrupulously honored" was discussed in James v. Arizona, 469 U.S. 990, 992–93, 105 S.Ct. 398, 83 L.Ed.2d 332 (1984):

To ensure that officials scrupulously honor this right, we have established in Edwards v. Arizona, [451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)], and Oregon v. Bradshaw, [462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)], the stringent rule that an accused who has invoked his Fifth Amendment right to assistance of counsel cannot be subject to official custodial interrogation unless and until the accused (1) "initiates" further discussions relating to the investigation, and (2) makes a knowing and

intelligent waiver of the right to counsel under the [waiver] standard of *Johnson v. Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938), and its progeny.

(Some citations omitted.) Furthermore, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda,* 384 U.S. at 475, 86 S.Ct. 1602. This high bar on the State's burden of proving waiver of the right to remain silent is best understood as a result of the view that courts are to "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

▬ When invoking a *Miranda* right, the accused must be unambiguous and unequivocal. *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). For example, when invoking the right to counsel, the Court has said:

> [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, [the law] does not require that the officers stop questioning the suspect.

*Davis,* 512 U.S. at 459, 114 S.Ct. 2350. This court has extended the *Davis* holding by reviewing the question of specificity when invoking the right to silence. *See Standridge v. State,* 329 Ark. 473, 479, 951 S.W.2d 299, 301 (1997); *Bowen v. State,* 322 Ark. 483, 911 S.W.2d 555 (1995). For example, in *Standridge,* we held that a

suspect's statement "I ain't ready to talk" was not unequivocal. Likewise, we held in *Bowen* that the statement that the accused wanted to "think about" talking to police officers was not sufficiently definite. Moreover, in *Bowen* we held that the right to remain silent must be made unequivocally, and answering questions following a statement that attempts to invoke the right to remain silent may waive that right by implication.

Turning to the present appeal, appellant argues that the circuit court should have suppressed his statement because he invoked his right to remain silent when he indicated, "Okay, then we're through with this interview then." Viewing that statement in context, it was made after appellant had repeatedly denied sexually assaulting C.H. and the detective had repeatedly refused to believe appellant. The alleged invocation followed the detective's statement, "Stop, I'm not going to hear it." In essence, appellant and the detective were arguing and appellant was informing Detective Walker that if he did not believe him, then there was nothing left to discuss. However, appellant kept talking, denying involvement. We hold that appellant's statement was not an unequivocal request invoking his right to remain silent and that pursuant to *Bowen,* his willingness to continue the conversation implicitly waived any attempt to invoke that right.

### III. *Admission of Letters*

▬ Appellant contends that the trial court erred in allowing into evidence letters that appellant wrote and sent to his wife during his incarceration because the prejudicial effect of those letters greatly outweighed any probative value under Rule 403 of the Arkansas Rules of Evidence. Particularly, appellant maintains that the letters indicated both a consciousness of guilt and of innocence, thus confus-

ing the jury. Appellant argues that the letters shed no light on whether appellant actually committed the sexual-abuse crimes against C.H. and only function to create an unfair prejudice in the jurors' minds that appellant's wife, who committed suicide shortly after receiving the letters, took her own life due to appellant's actions.

Rule 403 of the Arkansas Rules of Evidence provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Ark. R. Evid. 403 (2009). We have repeatedly held that the balancing mandated by Rule 403 is a matter left to a trial court's sound discretion, and thus, we will not reverse the court's ruling absent a showing of manifest abuse. *Phillips v. State,* 344 Ark. 453, 40 S.W.3d 778 (2001). Furthermore, when evidence of guilt is overwhelming, slight errors in the introduction of evidence do not constitute reversible error. *Id.* Evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *See McCullough v. State,* 2009 Ark. 134, 298 S.W.3d 452. The credibility of witnesses is an issue for the jury and not the court. *Bell v. State,* 371 Ark. 375, 266 S.W.3d 696 (2007). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

We hold that the trial court did not manifestly abuse its discretion by allowing the State to introduce appellant's letters to his wife. The State argues that the letters show appellant's guilty state of mind and created a reasonable inference that appellant was attempting to convince his wife to help him beat the charges so they could leave the state and DHS's reach. In fact, any suggestion of a guilty conscience in the letter is slight. Appellant never confesses to the crime in the letter, and as the weigher of credibility, the jury was charged with interpreting appellant's state of mind and intentions in writing the letter. Additionally, there is no evidence in the record that the jury had any knowledge of appellant's wife's suicide. Furthermore, C.H.'s testimony provided sufficient evidence—without the letter—to support a finding of guilt. Under these circumstances, we can find no basis for reversal.

## IV. *Testimony Regarding Appellant's Prior Bad Acts*

Appellant asserts that the trial court erred in allowing the State to introduce, via the testimony of a prior victim and his mother, appellant's prior second-degree sexual assault conviction. Appellant maintains that the State's only purpose in introducing this evidence was to prove that appellant acted in conformity with his prior acts and that the evidence does not fit the pedophile exception because the prior victim did not have an intimate relationship with appellant. Basically, appellant claims that because his wife—not himself—babysat C.L., appellant was not in the requisite position of authority over C.L. Appellant also argues on appeal that the prejudicial effect of this testimony outweighs any probative nature.

The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, which this court will not disturb on appeal absent a showing of manifest abuse. *Kelley v. State,* 2009 Ark. 389, 327 S.W.3d 373. Rule 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2009). Evidence offered under Rule 404(b) must be independently relevant to make the existence of any fact of consequence more or less probable than it would be without the evidence. *Id.* In other words, the prior bad act must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal. *Id.*

▉ This court has long recognized a "pedophile exception" to Rule 404(b). *Id.* We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Id.* The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id.* For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *Id.* We also require that there be an "intimate relationship" between the perpetrator and the victim of the prior act. *Id.*

In his pre-trial motion in limine, appellant argued that the State's only rationale for introducing his prior sexual-assault conviction was to prejudice the jury and that the introduction of the testimony was meant only to reflect on appellant's bad character. When the State introduced the testimony of C.L. and his mother at trial, appellant objected on the grounds that the evidence was "highly inflammable" and un-

necessary because the State had already proven its case through the testimony of C.H. Appellant never argued to the trial court that the State had failed to show he was in the requisite position of authority over the prior victim for the pedophile exception to apply. Arguments made for the first time on appeal will not be considered. *Singleton v. State,* 2009 Ark. 594, 357 S.W.3d 891. Therefore, any argument by appellant that C.L.'s testimony should have been excluded because it did not fall under the pedophile exception is not preserved.

Regardless, the trial court did not err in allowing C.L. and his mother to testify because the testimony was admissible under the pedophile exception. Both witnesses testified that C.L. spent a lot of time with appellant while his wife served as babysitter and that C.L. often slept over at appellant's home. C.L.'s testimony regarding the sexual abuse was similar in nature to the testimony of C.H., both victims were young boys at the time of the abuse, both testified that appellant was often intoxicated at the time of the abuse, and both were subjected to sexual abuse while staying in appellant's home. Therefore, the circuit court did not err in allowing C.L. and his mother to testify under the pedophile exception.

V. *Rule 4–3(i) Analysis*

Pursuant to Arkansas Supreme Court Rule 4–3(i), we have reviewed the abstract, addendum, and record for all adverse rulings on objections, motions, and requests made by either party, and no reversible error has been found.

Affirmed.

BOWEN, J., not participating in final opinion.