2010 Ark. 420

**Randy Paul BROWN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–242.**

Supreme Court of Arkansas.

Nov. 4, 2010.

The Law Offices of J. Brent Standridge, P.A., Benton, by: J. Brent Standridge, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

RONALD L. SHEFFIELD, Justice.

Appellant Randy Paul Brown appeals from a judgment and commitment order, entered on November 24, 2008, finding him guilty of one count of sexual assault in the second degree. Brown also appeals from an order denying his motion for posttrial relief, entered on January 21, 2009. On appeal, Brown argues that the trial court erred by (1) permitting thirty-five year old uncharged misconduct evidence to be admitted during the sentencing phase of the trial; (2) not granting appellant a reduction in sentence in that the jury's recommendation of sentence occurred as a result of passion and prejudice; and (3) denying appellant's motion for posttrial relief as the verdict was contrary to the law and evidence. On February 17, 2010, the Arkansas Court of Appeals affirmed Brown's conviction but reversed and remanded for resentencing. *Brown v. State*, 2010 Ark. App. 154, 377 S.W.3d 354. We granted review; thus, our jurisdiction is pursuant to Ark. R. Sup. Ct. 2–4 (2010).

On November 2, 2007, the State filed a criminal information against Brown, charging him with five counts of sexual assault in the second degree pursuant to Arkansas Code Annotated section 5–14–125 (Repl. 2006). The charges arose out of allegations that Brown had sexually assaulted his next-door neighbor, B.R., who was eight years old at the time of the abuse. On November 14, 2008, after Brown learned that the State intended to call Lou Ann Turri as a witness, he filed a motion in limine, seeking to exclude her testimony pursuant to Arkansas Rule of Evidence 404(b). According to the motion in limine, Turri's proffered testimony was that when she was thirteen years old, thirty-four years prior to the alleged criminal conduct against B.R., she visited her cousin, Brown's wife, and Brown initiated sexual contact with her. The circuit court heard the matter at an omnibus hearing on November 18, 2008, after which it granted the motion. The court specifically found that while relevant, Turri's testimony would be more prejudicial than probative.

Following a two-day jury trial, on November 18 and 19, 2008, Brown was convicted of one count of sexual assault in the second degree.[1] At the conclusion of the State's case, Brown moved for a directed verdict, arguing that "the State ha[d] not made a fact question regarding the elements of the crime...." The court denied the motion. Brown renewed the motion for directed verdict at the close of his case, which was again denied.

After the jury verdict was announced, the circuit court held an in camera hearing in which the State indicated its intent to introduce Turri's testimony during the sentencing phase of the trial. The trial court heard the proffered testimony of Turri again as well as arguments by the State and defense counsel, after which it ruled that Turri's testimony was relevant in sentencing as evidence of the defendant's character and as an aggravating circumstance.

The jury heard testimony at the penalty phase, including that of Turri, and recommended the maximum sentence of twenty

---

1. The judgment and commitment order indicates that a sentence was imposed for one count of sexual assault in the second degree and that the other four counts originally charged were nolle prossed.

years' incarceration in the Arkansas Department of Correction. The circuit court then sentenced Brown in accordance with the jury's recommendation. On December 23, 2008, Brown filed a motion for posttrial relief, again asserting that it was error to admit Turri's testimony at sentencing. He sought a reduction in sentence, or, in the alternative, a new trial. The motion also sought a new trial on guilt because, according to Brown, the jury's verdict was contrary to the law and evidence because the State's witnesses "should not be credited." The circuit court heard the motion on January 21, 2009, and announced its intention to deny the motion on all three points. An order denying the motion for posttrial relief was entered the same day.

■ On January 28, 2009, Brown filed a timely notice of appeal to the Arkansas Court of Appeals. A unanimous three-judge panel affirmed Brown's conviction and reversed and remanded for resentencing, finding that the circuit court erred in admitting Turri's testimony at the sentencing phase of the trial.[2] The State filed a petition for review, which was granted |₄on April 29, 2010. When this court grants review, we treat the appeal as if it were originally filed in this court. *See, e.g., T.C. v. State,* 2010 Ark. 240, 364 S.W.3d 53.

### I. *Sufficiency of the Evidence*

■ Because Brown's third point on appeal is a challenge to the sufficiency of the evidence, double-jeopardy concerns require us to address it first. *See, e.g., Cockrell v. State,* 2010 Ark. 258, 370 S.W.3d 197; *see also Murchison v. State,* 249 Ark. 861, 874–75, 462 S.W.2d 853, 859 (1971) (motion for new trial on grounds the verdict is contrary to the evidence is a

challenge to the sufficiency of the evidence).

On appeal, Brown contends that the jury's verdict finding him guilty of sexual assault in the second degree was contrary to the law and evidence. Specifically, Brown maintains, as he did at trial, that B.R.'s parents instructed her to say that Brown had touched her in order to extort money from him. According to Brown, B.R.'s parents were in difficult financial circumstances and fabricated the abuse allegations to recover a civil judgment from him. The State answers that sufficient evidence supports the verdict. We affirm.

■ The standard of review for a sufficiency-of-the-evidence challenge is well established; this court views the evidence in the light most favorable to the State and considers only evidence that supports the verdict. *See, e.g., Carter v. State,* 2010 Ark. 293, 367 S.W.3d 544. We will affirm a verdict if there is substantial evidence to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another, without resorting to speculation or conjecture. *Id.*

■ |₅Brown was charged with and found guilty of second-degree sexual assault, pursuant to Arkansas Code Annotated section 5–14–125:

(a) A person commits sexual assault in the second degree if the person:

(3) Being eighteen (18) years of age or older, engages in sexual conduct with another person who is:

(A) Less than fourteen (14) years of age; and

(B) Not the person's spouse.

Ark.Code Ann. § 5–14–125(a)(3) (Repl. 2006).[3] It is undisputed that B.R. was

---

**2.** Judge Karen Baker concurred without written opinion.

**3.** According to the criminal information, Brown was originally charged under section

under the age of fourteen when the abuse occurred and that she was not Brown's spouse. Thus, the only disputed element of the second-degree sexual assault charge was whether Brown engaged in sexual contact with B.R. "Sexual contact" is defined by statute as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." *Id.* § 5–14–101(9). Finally, this court has held that in cases of sexual abuse, the jury can assume that the defendant had sexual contact with the victim for the purpose of sexual gratification, and it is not necessary for the State to directly prove that he was so motivated. *Bryant v. State*, 2010 Ark. 7, 377 S.W.3d 152.

The State's first witness was the victim, B.R. The prosecuting attorney asked her if she knew the difference between right and wrong, and B.R. answered affirmatively. She then testified that it was wrong to lie and that there were consequences for doing so. B.R. identified the parts of a male and female body, specifically referring to a vagina as a "pee pee" and breasts as "boobs."[4] B.R. testified that the pee pee, boobs, and butt were private on a girl, and the penis and butt were private on a boy. She also told the jury that a "good touch" was a "hug or a pat or something like that" and a "bad touch is somewhere you're not supposed to touch." The prosecutor then asked B.R. if anyone had ever given her a bad touch. B.R. responded affirmatively and named the defendant, Randy Brown.

B.R. testified that she knew Brown because he had been her neighbor. She said that she saw him often and that she would go to his yard and help him garden. B.R. told the jury that she felt Brown was trustful and she did not feel unsafe around him but that changed when "he touched [her] in the wrong place." It was B.R.'s testimony that Brown touched her on her boobs and her pee pee more than one time. She said that she would sometimes go into Brown's house, and the touching occurred in the laundry room. According to B.R., Brown would touch her under her clothes and would say, "I love my [B.]," and "does that feel good?" B.R. also testified that once, in Brown's den, he lifted up her shirt and his shirt, and "his stomach touched [hers]."

B.R. also said that Brown "sat down on top of [her] and humped [her] moving back, moving forwards and backwards." It was her testimony that his penis touched her through his clothes and that "he breathed really hard." Next, B.R. told the jury that, on one occasion, she went to Brown's house to show his wife, Cathy, her "fluffy purple dress." She said that when she got there, Brown said that Cathy was in the bathroom, and then he touched her pee pee with his hand. B.R. also testified that Brown had "kissed [her] pee pee."

The prosecutor then asked B.R. why she did not tell anyone after the first time Brown touched her. She responded as follows: "I didn't understand what, I didn't know that could even happen to a little girl. And I didn't know what it meant. I didn't know it was bad. I didn't know." B.R. testified that later she "just got a feeling" and that she told her mother after she "realized it was bad, just that feeling that makes you kind of aware."

5–14–125(a)(3) and (4), which provides that he engaged in sexual conduct with another person who was less than eighteen (18) years of age, and he was a person in a position of trust or authority over the minor. The jury was only instructed as to the charge under section 5–14–125(a)(3).

4. B.R. otherwise used anatomically correct words for the rest of the body parts.

The State next called B.R.'s father, Andy. He testified that he had a good "neighborly relationship" with Brown until his wife told him what B.R. said happened at his house. He said that his wife told him of the abuse sometime in early September, close to Labor Day weekend. It was his testimony that neither he nor his wife immediately informed the police after B.R. reported the abuse and that the day after he found out about it, he confronted Brown in his driveway. According to Andy, he said "[B] told me that you had been touching her." Andy testified that Brown "immediately dropped his head and looked to the ground. And he said, 'Andy, I'm so sorry.'" According to Andy, Brown also told him that he had been taking medication "that's got me acting crazy." Brown also allegedly said to Andy: "I'm 60 years old, Andy. I'm too old to go to jail." Andy told the jury that he and his wife considered what to do and, the next week, they reported the abuse to the police. Andy then told the jury that he filed a civil lawsuit against Brown "months later."

B.R.'s mother, Shannon, testified next for the State. She told the jury that B.R. was "crying and she was very embarrassed" when she told her what had happened with Brown. She said that B.R. "was crying and begging me not to tell anybody" and that she and her husband "just weren't real sure what to do." She testified that she and her husband talked to her sister and brother-in-law and then decided they had to report the incident to the police. Shannon also testified that B.R. did not return to Brown's house after she told her about the abuse.

Finally, Detective Eric Haworth of the Benton Police Department testified for the prosecution. He said that he interviewed B.R. when she was brought to the police station to report the abuse. Haworth testified that he had been trained in techniques to interview child victims. He told the jury that he took B.R.'s statement and that it was just he and B.R. when the statement was taken. Haworth also testified that he spoke to B.R.'s mother and father and that after the interview was concluded, he went with another officer to Brown's house. According to Haworth, Brown answered the door, and he said he had been expecting the police. Haworth also said that he entered Brown's house, and the layout was just as B.R. had described it in her statement.

Brown was permitted to cross-examine each witness. During the cross-examinations, he elicited testimony from Andy that he had met with an attorney about filing for bankruptcy two weeks before the abuse was reported to the police. Brown was also permitted to question the witnesses as to inconsistencies in their testimony about the timing of events and, specifically, the delay in reporting the abuse to the police. Brown's attorney also asked Andy whether he had asked Brown for money in exchange for not filing charges. Andy answered that he had not.

After Brown moved for directed verdict, which was denied, he called Detective Haworth back to the stand. Brown briefly questioned him about his discussion with Andy on the day B.R. was brought to the police station. Next, Brown called Rene Thornhill, his daughter, to the witness stand. She testified that she and her husband had visited her mother and father during Labor Day weekend 2007. She testified that she remembered her father talking to Andy in the driveway on the Friday evening of that weekend. She also testified that B.R. had come over to play with her son on Thursday when they arrived. According to Ms. Thornhill, on Saturday evening, B.R. again asked if her son

could play, but they were preparing to leave, and B.R. went back home.

Scott Thornhill, Ms. Thornhill's husband and Brown's son-in-law, testified next for the defense. He too recounted that he, his wife, and his son had visited Brown during Labor Day 2007. He said that he ran an errand with Brown late Friday afternoon, and when they returned, Andy met them in the driveway and asked to speak to Brown. According to Mr. Thornhill, he did not hear any of the conversation. On cross-examination, Mr. Thornhill testified that Brown did not say anything to him about his conversation with Andy.

Finally, Brown called Angie Tennant to the stand. She testified that she lived near B.R. and her family and that she knew the child. She told the jury that she did not notice any difference in B.R. after the abuse allegations were revealed.

After Ms. Tennant's testimony, the defense rested and renewed its motion for directed verdict, which was again denied. Following sentencing, Brown moved for posttrial relief, in part on grounds that the guilty verdict was contrary to the law and evidence. On appeal, Brown concedes that the victim testified about the abuse. However, he argues that "the reasons to doubt her testimony stem directly from the influence the parents had over their young child." He maintains, as he did at trial, that B.R.'s parents were "attempting to extort money from [Brown] given the substantial and unreasonable delay in reporting the incident to the authorities."

B.R. testified in detail about various instances in which Brown touched her inappropriately. Her parents and Detective Haworth also told the jury that B.R. had recounted the same information to them. Brown was permitted throughout the trial to cross-examine the State's witnesses and to argue that B.R.'s parents fabricated the abuse story in order to ex-

tort money from Brown. It is well settled that a victim's testimony alone provides sufficient evidence to support a sexual assault charge and that her testimony does not need to be corroborated. *See, e.g., Bryant v. State,* 2010 Ark. 7, at 8, 377 S.W.3d 152, 158. Furthermore, to the extent there are inconsistencies in the victim's testimony, or that of other State witnesses, it is a matter of credibility and is for the jury to decide. *Id.* In the instant case, the jury considered all of the testimony and chose to believe B.R. We affirm on this point.

## II. *Turri's Testimony*

For his next point on appeal, Brown argues that it was error to permit Lou Ann Turri to testify at sentencing about an alleged sexual assault that occurred thirty-four years prior to the instant trial for which Brown was never charged or convicted. According to Brown, whatever probative value the evidence may have had was substantially outweighed by the danger of unfair prejudice, in light of the fact that Turri testified to events that were very remote in time and dissimilar to the alleged conduct against B.R. Brown also argues that the circuit court should have suppressed Turri's testimony at sentencing under this court's holding in *Rush v. State,* 324 Ark. 147, 919 S.W.2d 933 (1996). The State responds that Turri's testimony was probative, relevant, and admissible. The State specifically argues that the testimony was relevant to Brown's character and as an aggravating circumstance under Arkansas Code Annotated section 16–97–103. The State disagrees that our holding in *Rush* is applicable to the instant case.

According to section 16–97–103:

Evidence relevant to sentencing by either the court or a jury may include,

but is not limited to, the following, provided no evidence shall be construed under this section as overriding the rape shield statute, § 16–42–101:

(1) The law applicable to parole, meritorious good time, or transfer;

(2) Prior convictions of the defendant, both felony and misdemeanor. The jury may be advised as to the nature of the previous convictions, the date and place thereof, the sentence received, and the date of release from confinement or supervision from all prior offenses;

(3) Prior judicial determinations of delinquency in juvenile court, subject to the following limitations:

(i) That prior delinquency adjudications be subject to a judicial determination that the relevant value of the prior juvenile adjudication outweigh its prejudicial value;

(ii) That consideration only be given to juvenile delinquency adjudications for crimes for which the juvenile could have been tried as an adult; and

(iii) That in no event shall delinquency adjudications for acts occurring more than ten (10) years prior to the commission of the offense charged be considered;

(4) Victim impact evidence or statements;

(5) Relevant character evidence;

(6) Evidence of aggravating and mitigating circumstances. The criteria for departure from the sentencing standards may serve as examples of this type of evidence;

(7) Evidence relevant to guilt presented in the first stage;

(8) Evidence held inadmissible in the first stage may be resubmitted for consideration in the second stage if the basis for exclusion did not apply to sentencing; and

(9) Rebuttal evidence.

Ark.Code Ann. § 16–97–103 (Repl.2006). This court has made clear that the rules of evidence apply to evidence introduced at the sentencing phase; however, pursuant to section 16–97–103, certain evidence is admissible at sentencing that would not have been admissible at the guilt phase of the trial. *See, e.g., Crawford v. State,* 362 Ark. 301, 306, 208 S.W.3d 146, 149 (2005). Finally, a circuit court's decision to admit evidence in the penalty phase of a trial is reviewed for an abuse of discretion. *See, e.g., MacKool v. State,* 365 Ark. 416, 456, 231 S.W.3d 676, 706 (2006).

First, Brown's reliance on *Rush v. State,* 324 Ark. 147, 919 S.W.2d 933 (1996) is misplaced. In *Rush,* the victim of a prior battery, for which the defendant had been convicted, testified about the facts and circumstances surrounding that conviction. In *Rush,* the parties agreed that evidence of the prior conviction was admissible, if relevant, under section 16–97–103(2). However, Rush argued that he was prejudiced because the statute did not contemplate live testimony by a previous victim. The court agreed and held that "live testimony from a victim of a crime which occurred five years earlier goes far beyond advising the jury of the nature, or general character, of that conviction." *Id.* at 153, 919 S.W.2d at 936. The court held that a certified copy of the information and judgment of conviction would suffice to introduce evidence of a prior conviction under section 16–97–103(2). *Id.*

*Rush* does not apply to the instant case because the circuit court did not admit Turri's evidence under section 16–97–103(2). In fact, it was not admissible under that subsection because Brown was not charged with a crime nor was he convicted. In *Rush,* the court expressly noted that proof of aggravating circumstances was not at issue, but, instead the question

was "how to appropriately advise the jury of the nature of a previous conviction." *Id.* In this case, the trial court held that Turri's testimony was relevant as evidence of Brown's character and as evidence of an aggravating circumstance. Therefore, subsections 16–97–103(5) and (6) apply.

In *Crawford v. State,* 362 Ark. 301, 208 S.W.3d 146 (2005), Crawford was convicted by a jury of possession of drug paraphernalia with intent to manufacture methamphetamine. At sentencing, the trial court permitted the State to elicit testimony from a police detective who told the jury that on two occasions, subsequent to his arrest for the crime for which Crawford was convicted, the detective searched Crawford's house and found items used to manufacture methamphetamine. On appeal, Crawford argued that the officer's testimony should not have been admitted under section 16–97–103(5) or (6). This court disagreed and held that the evidence was properly admitted under both subsections. *Id.* at 306–08, 208 S.W.3d at 149–51. The court specifically held that character evidence that might not be admissible at the guilt phase of a trial can come in at sentencing. *Id.* at 306, 208 S.W.3d at 149. The court further held that the evidence of subsequent drug activity demonstrated Crawford's propensity to engage in illegal conduct in the future and was thus relevant as an aggravating circumstance. *Id.* at 308, 208 S.W.3d at 151.

The year after *Crawford* was decided, this court held that it was not an abuse of discretion at the penalty phase of a first-degree murder trial to admit evidence of a thirty-two-year-old homicide investigation implicating the defendant. *MacKool v. State,* 365 Ark. 416, 456, 231 S.W.3d 676, 705 (2006). The court specifically held that it was relevant character evidence, permitted by section 16–97–103(5). *Id.; see also Williams v. State,* 363 Ark. 395,

214 S.W.3d 829 (2005) (evidence of a subsequent rape for which defendant had not been convicted was relevant at sentencing); *Williams v. State,* 2009 Ark. App. 554, 2009 WL 2778000 (prior refusal-to-submit violations admissible at sentencing in a trial for driving while intoxicated).

Thus, our holdings in *Crawford* and *MacKool* govern this case, and evidence of prior or subsequent uncharged criminal conduct can be admissible at the penalty phase of a trial if it is relevant evidence of the defendant's character or as evidence of an aggravating circumstance. In this case, the circuit court ruled that Turri's testimony was relevant for both reasons. Despite the large amount of time between the events giving rise to Turri's testimony and the instant trial, we hold that it was not an abuse of discretion for the judge to allow her to testify at sentencing.

As a final note, Brown argues that for evidence to be admissible, it must not be too separated in time, making the evidence unduly remote. He relies on Arkansas Rule of Evidence 404(b). *See also Lamb v. State,* 372 Ark. 277, 275 S.W.3d 144 (2008) (regarding the so-called pedophile exception to Rule 404(b)). Rule 404(b) states that, while "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith," it may be admitted for other purposes, namely "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b) (2010). However, as already discussed in this opinion, this court has expressly held that under section 16–97–103(5), relevant character evidence is admissible at the penalty phase of a trial even where it was inadmissible in the guilt-innocence phase. *See, e.g., Crawford,* 362 Ark. at 306, 208 S.W.3d

at 149. Therefore, the cases relied on by Brown and those cited in response by the State with respect to the application of Rule 404(b) in the guilt-innocence phase of a trial are inapplicable.

### III. *Reduction of Brown's Sentence*

As a final point on appeal, Brown urges that the circuit court erred in failing to reduce his sentence because the jury's recommendation of the maximum sentence was the result of passion or prejudice. The State contends that Brown cannot appeal his sentence where it falls within the statutory range prescribed by statute.

■ Brown relies on Arkansas Code Annotated section 16–90–107(e), which provides as follows:

> The court shall have power in all cases of conviction to reduce the extent or duration of the punishment assessed by a jury so that the punishment is not in any case reduced below the limit prescribed by law in such cases if the conviction is proper and the punishment assessed is greater than ought to be inflicted under the circumstances of the case.

Ark.Code Ann. § 16–90–107(e) (Repl.2006). The statute plainly gives the trial court the authority to reduce the recommendation of the jury, but it does not require it to do so. Since the court did not abuse its discretion, we affirm.

First, Brown's argument on this point stems in large part from his contention that Turri should not have been permitted to testify during the sentencing phase of the trial. We have held that the circuit court did not abuse its discretion in allowing Turri to testify. Therefore, it was not error to deny Brown's request for a sentence reduction on grounds that her testimony should not have been admitted.

■ Brown also urges that "there was no evidence of penetration of the victim" and, citing the sentencing testimony of his son, contends that he "had an exemplary record." He thus contends that the maximum term of imprisonment was unduly harsh. We hold that it was for the jury to hear the penalty-phase testimony and to recommend a sentence. The judge then exercised his discretion in adopting the jury's sentence recommendation.

■ This court has held that it will not reduce a sentence, even where it considers it unduly harsh, if it falls within the legislative limits fixed by the General Assembly. *See Henderson v. State,* 322 Ark. 402, 411, 910 S.W.2d 656, 660 (1995); *see also McClish v. State,* 331 Ark. 295, 298, 962 S.W.2d 332, 334 (1998) ("[T]his court has noted its unwillingness to review the imposition of a sentence simply because it is excessive, when the sentence is within the range prescribed by statute of the offense in question."). We hold that the circuit court did not abuse its discretion in denying Brown's posttrial request for a sentence reduction pursuant to Arkansas Code Annotated section 16–90–107(e), and we affirm on this point.

### IV. *Conclusion*

We hold that there was sufficient evidence to support Brown's conviction. We also hold that the circuit court did not abuse its discretion in permitting Lou Ann Turri to testify during the penalty phase of the trial. Finally, the circuit court did not abuse its discretion in imposing a sentence that falls within the statutory range for second-degree sexual assault.

Circuit court affirmed. Opinion of the court of appeals vacated.

HANNAH, C.J., and DANIELSON, J., concur.

HANNAH, Chief Justice, concurring.

I concur in the decision reached by the majority. It is correct based on existing precedent. However, the current precedent on Arkansas Code Annotated section 16–97–103 (Repl.2006) is in error. This court's statement in *Crawford v. State*, 362 Ark. 301, 304, 208 S.W.3d 146, 148 (2005), that section 16–97–103 "provides a list of new evidence that may be admitted in the sentencing phase, although such evidence might not have been admissible during the guilt phase of the trial," is clearly wrong.[1]

In *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994), decided in the year following the adoption of section 16–97–103,[2] we noted that section 16–97–103 concerned evidence that was to be deemed relevant in the sentencing stage of a criminal trial; however, we stated that "[t]he introduction of evidence during this stage must be governed by our rules of admissibility and exclusion; otherwise, these proceedings would not pass constitutional muster." *Hill*, 318 Ark. at 413, 887 S.W.2d at 278. This court in *Hill* further stated that "we hold steadfast to our previous holdings that, where there is a conflict between our procedural rules and a statute, statutes are given deference only to the extent to which they are compatible with our rules, and that conflicts which compromise those rules are resolved with our rules remaining supreme." *Id.*, 887 S.W.2d at 277. Thus it was clear under *Hill* that section 16–97–103 was seen only as advisory and even then applicable only to the extent it did not conflict with our own rules of evidence.

The analysis in *Hill* clearly precludes the statement in *Crawford*. Admissibility of evidence in sentencing is governed by our rules of evidence. *Hill*, 318 Ark. at 413, 887 S.W.2d at 278. Arkansas Rule of Evidence 404(b) controls admission of character evidence at all stages of criminal proceedings.

As the circuit court initially determined in the present case, the thirty-four-year-old uncharged misconduct was not sufficiently close in time or nature to be admissible under Rule 404(b). It is patently nonsensical to conclude that character evidence excluded under Rule 404(b), a rule of this court determining relevance, is admissible under a statute. This court's holding in *Hill* that our rules govern the sentencing phase as well as the guilt phase of trial precludes the assertion that a distinction on relevance is to be made based on section 16–97–103. The evidence is either relevant and admissible under this court's rules of evidence or it is not. If evidence is irrelevant under our rules of evidence, but admitted under a grant of statutory authority, there is a due-process problem. If there is an issue of whether character evidence is inadmissible for purposes of proving guilt but admissible for purposes of sentencing, it is a question of relevance decided by application of Rule 404(b).

Rules, and in this case a statute such as section 16–97–103, contain shorthand descriptions of the legal principles they are intended to reference. The holdings of this court control and define what the

1. The General Assembly recognizes that it may not establish rules of practice or procedure. Arkansas Code Annotated section 16–11–301 (Repl.2010) states that "[a]ll statutes concerning pleading, practice, and procedure in all courts shall be deemed superseded by rules adopted by the Supreme Court pursuant to Arkansas Constitution, amendment 80, § 3, or pursuant to the Supreme Court's constitutional, inherent, or statutory authority prior to the effective date of Arkansas Constitution, amendment 80."

2. *See* Acts of Mar. 16, 1993, Nos. 535, 551, 1993 Ark. Acts 1505, 1624.

rules provide, not vice versa. Section 16–97–103 does not control relevance. Relevance is an issue for this court to decide, and our decisions in that regard necessarily control the meaning of the rules, or in this case a statute. If we permit a rule to define what the holding must be, we have put the cart before the horse and abdicated our duty. The error in the interpretation of section 16–97–103 should be addressed by this court at the first opportunity.

DANIELSON, J., joins.