Thomas Vernon WILLIAMS *v.* STATE of Arkansas

CR 04-964

214 S.W.3d 829

Supreme Court of Arkansas
Opinion delivered October 6, 2005

*Phillis J. LeMarc,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Brent P. Gasper,* Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Thomas Vernon Williams appeals the order of the Grant County Circuit Court convicting him of raping a twelve-year-old boy and sentencing him to life imprisonment in the Arkansas Department of Correction. Appellant raises five points for reversal: (1) the trial court erred in denying his motion for directed verdict; (2) the trial court erred in denying his motion to suppress his custodial statements; (3) the trial court abused its discretion in permitting the prosecutor to ask potential jurors about pedophiles during *voir dire*; (4) the trial court erred in refusing to give an instruction on the lesser offense of second-degree sexual assault; and (5) the trial court abused its discretion in allowing evidence of other crimes during sentencing. We have jurisdiction of this appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

### I.  Denial of Motion for Directed Verdict

■ Appellant argues that the trial court erred in denying his motion for a directed verdict. Although this is actually Appellant's third point on appeal, we address it first, as an appellant's right to be free from double jeopardy requires a review of the sufficiency of the evidence prior to a review of any asserted trial errors. *See Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005); *Carter v. State*, 360 Ark. 266, 200 S.W.3d 906 (2005). We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Hampton v. State*, 357 Ark. 473, 183 S.W.3d 148 (2004); *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.* Additionally, when reviewing a challenge to the sufficiency of the evidence, we consider all the evidence, including that which may have been inadmissible, in the light most favorable to the State. *Hampton*, 357 Ark. 473, 183 S.W.3d 148; *George v. State*, 356 Ark. 345, 151 S.W.3d 770 (2004).

■ Appellant was convicted of rape by engaging in deviate sexual activity with another person who was less than fourteen years old, pursuant to Ark. Code Ann. § 5-14-103(a)(1)(C)(i) (Supp. 2005). "Deviate sexual activity" is defined, in pertinent part, as "[t]he penetration, however slight, of the anus or mouth of one person by the penis of another person[.]" *See* Ark. Code Ann. § 5-14-101(1)(A) (Supp. 2005). It is well settled in this state that the uncorroborated testimony of a rape victim is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *See Davis v. State*, 362 Ark. 34, 207 S.W.3d 474 (2005); *Walters v. State*, 358 Ark. 439, 193 S.W.3d 257 (2004); *Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002).

M.D., the victim in this case, testified that during June or July of 2001, when he was twelve years old, Appellant babysat him and his younger brother. At one point, M.D. and Appellant walked to a neighbor's house, while M.D.'s brother stayed home

and played video games. The neighbor was not at home, so M.D. and Appellant decided to walk down to the creek behind M.D.'s mobile home. When they got there, M.D. started messing with the crawdads in the stream. Appellant then asked M.D. to perform oral sex on him. Specifically, he pulled down his pants and told M.D. "to go down on him." M.D. told him no, but Appellant kept asking him to do it. Finally, Appellant told M.D. that if he did not perform oral sex on him, he would ruin the boy's future in his home town. Appellant told him that he would tell his brother, Matt Williams, who was M.D.'s friend and also worked with M.D.'s stepmother, that M.D. had tried to get Appellant to perform oral sex on him. According to M.D., Appellant's threat tore him up inside, because he did not want people in his town thinking that he was homosexual. M.D. eventually complied and performed oral sex on Appellant. Appellant then performed oral sex on M.D.

The next day, M.D. told his father and stepmother what had happened. His father wanted to call the police and report Appellant, but M.D. begged him not to, because he was afraid of what his friends would think of him. His father reluctantly agreed. Later on, M.D.'s father attempted to find Appellant to settle the matter his own way, but to no avail. He finally ran into Appellant about two years later, in March 2003. According to M.D.'s father, when he approached Appellant, Appellant started crying and told him that he was sorry about what had happened.

Investigator Charlie Winborn, of the Sheridan Police Department, testified that he took a videotaped statement from Appellant in December 2003. Part of that statement was played for the jury, wherein Winborn asked Appellant if he knew M.D., and Appellant said he did. When the officer asked how he knew M.D., Appellant answered that when M.D. was thirteen years old, he stayed the night at M.D.'s house and performed oral sex on the boy.

At the close of the State's case-in-chief, defense counsel made a motion for directed verdict on the ground that there was insufficient evidence of rape. Particularly, defense counsel asserted that the only evidence came from the victim and that, given his age and his testimony that he was not absolutely positive that the crime occurred in the summer of 2001, as opposed to the following summer, his testimony was insufficient proof. This is the same argument offered on appeal.

■ ■ We hold that the foregoing evidence is more than sufficient to support Appellant's rape conviction. As stated above, the uncorroborated testimony of the victim constitutes substantial evidence if it establishes all of the elements necessary to prove the crime. Here, there were only two necessary elements: (1) that Appellant engaged in deviate sexual activity with (2) another person who was less than fourteen years of age at the time. M.D.'s testimony established that when he was twelve years old, he performed oral sex on Appellant after being threatened and Appellant, in turn, performed oral sex on him. As for the date of the crime, M.D. testified that he was "almost positive" that it occurred in the summer of 2001, when he was twelve. Contrary to Appellant's argument, the fact that M.D. was not absolutely certain of the date does not in any way lessen the proof against him, as that is an issue of credibility. It is well settled that this court will not weigh the credibility of the witnesses, as that is a determination for the jury. *See, e.g., Clem,* 351 Ark. 112, 90 S.W.3d 428; *Burmingham v. State,* 342 Ark. 95, 27 S.W.3d 351 (2000). Moreover, we cannot ignore the fact that even if the crime had occurred the following summer, the proof is sufficient, as M.D. still would have been under the age of fourteen. Accordingly, we affirm the trial court's denial of Appellant's motion for directed verdict.

## II. Denial of Motion to Suppress Appellant's Custodial Statements

Appellant argues that the trial court erred in denying his motion to suppress his custodial statements to police. There were two statements taken from Appellant, and both were recorded on the same VHS tape. The first statement occurred on December 17, 2003, and was conducted by Officer Winborn and Lieutenant Jimmy Vaughn, also of the Sheridan Police Department. The subject of this first interview was an investigation of allegations made by then six-year-old M.C., who is not a victim in this case. Appellant was not under arrest at the time, and he had been given his *Miranda* rights prior to being questioned. Throughout the interview, Appellant repeatedly and consistently denied any improper touching of M.C. At one point during the interview, however, Officer Winborn asked Appellant if he knew M.D., the victim in this case, and Appellant spontaneously confessed that he had performed oral sex on M.D. a couple of years earlier, when he was twenty-three and M.D. was thirteen.

The second interview was taken on January 8, 2004. One day earlier, Winborn had taken a statement from M.D., in which

the boy stated that Appellant had raped him. Based on this information, Winborn arrested Appellant that same date, January 7. Immediately upon arresting him, Winborn verbally advised Appellant of his *Miranda* rights. The following day, Winborn interviewed Appellant about the crime. He did not repeat the *Miranda* warnings that he had given the previous day. During the course of that interview, Appellant made incriminating statements about M.D. and M.C.

Appellant objected to his statements made in the first interview on the ground that they were not made voluntarily, knowingly, and intelligently. He argued that his first statement was coerced by the officers' false promises that they would get him help in the form of psychological counseling.[1] Regarding the second statement, Appellant argued that his confession should have been suppressed because Winborn failed to repeat the *Miranda* warnings he had given to Appellant the day before, at the time of his arrest.

We note at the outset that a statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). In order to determine whether a waiver of *Miranda* rights is voluntary, we look to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based on the totality of the circumstances. *Id.*

A statement induced by a false promise of reward or leniency is not a voluntary statement. *Roberts v. State*, 352 Ark. 489, 102 S.W.3d 482 (2003). When a police officer makes a false promise that misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been made voluntarily, knowingly, and intelligently. *Id.* For the statement to be involuntary, the promise must have induced or influenced the confession. *Id.*; *Bisbee v. State*, 341 Ark. 508, 17

---

[1] Appellant also argued below that his confession regarding M.D. during the first interview should have been suppressed because the *Miranda* warning he was given pertained to the crime against M.C., and the officer failed to readvise him of his *Miranda* rights before asking him about M.D. He has abandoned this argument on appeal.

S.W.3d 477 (2000), *overruled on other grounds in Grillot*, 353 Ark. 294, 107 S.W.3d 136. Furthermore, the defendant must show that the confession was untrue, because the object of the rule is not to exclude a confession of truth, but to avoid the possibility of a confession of guilt from one who is, in fact, innocent. *Id.* In determining whether there has been a misleading promise of reward or leniency, this court views the totality of the circumstances and examines, first, the officer's statement and, second, the vulnerability of the defendant. *Id.*

In the present case, Appellant challenged five excerpts from the December 17, 2003, interview in which Officer Winborn and Lieutenant Vaughn made statements to the effect that they wanted to help Appellant. By way of example, the following exchange occurred between Appellant and Officer Winborn:

Q. . . . I think we're really, really twisted around here, Thomas, and I think like I'm saying, we can stop a lot of this right now and grab the bull by the horns.

A. Because I don't want to have to go to prison.

Q. I understand that. Nobody wants to have to go to prison, *but somebody got to go to that doctor, somebody got to see a doctor, and that's what I'm working on right now because if you've got a problem, I can help you. If you don't want help, then that's when you go to prison.*

A. So you want me to admit that I have a problem and that I need help?

Q. I want you to tell me what happened. *If you tell me what happened, I can help you.* If you tell me not what happened, I've got to take the black and white and let the man in the black robe decide on the evidence that I've got and what your attorney, when you get one and you'll have to get one, if he suppresses my stuff and then that 12 people in the jury is going to say guilty or not guilty and this doctor that I'm talking about is —

A. Okay, you're wanting me to tell you what happened.

Q. Exactly. We know what happened, we know exactly what happened.

A. Well then tell me because I don't know. [Emphasis added.]

In addition to the five taped excerpts, Appellant also challenged a statement made by Winborn off tape, as Appellant was leaving, to the effect that Appellant would not go to prison and that they (the officers) would get him help. Appellant testified during the suppression hearing that the officers' statements led him astray, in that they led him to believe that if he told the truth, he would only receive counseling and would not go to prison.

On cross-examination, however, Appellant admitted that he did not tell the officers the truth about the other victim, M.C. He also admitted that the officers' promises of help did not result in his making any incriminating statements: "Well, they was trying to get the information out of me, but I never said anything." The prosecutor also asked Appellant about any effect the officer's alleged off-tape statement had on his confession about M.D. The exchange is as follows:

> Q. But the statement that you're claiming where he said you weren't going to prison, that was made after you'd already told him about [M.D.], wasn't it?
>
> A. No, that was —
>
> Q. That was after the tape was off?
>
> A. Yeah.
>
> Q. So that was after you had already given your statement; is that right?
>
> A. Yeah.
>
> Q. *So, you weren't relying on that when you gave your statement about [M.D.]?*
>
> A. *No.* [Emphasis added.]

Furthermore, the record reveals that approximately fifteen to twenty minutes had lapsed between the last time the officers made any statements of help and Appellant's confession that he performed oral sex on M.D. The record reveals further that Appellant's confession was not the product of any offers of help or even of any pointed questioning by the officers. Instead, as seen in the following exchange, the confession was spontaneous and was not responsive to the question posed by Officer Winborn:

Q. [M.D.], do you know him?

A. He used to live over where Amber and I used to live.

Q. On Blake Street?

A. Yes.

Q. (Inaudible.)

A. Yes.

Q. *How did you know him, was he a friend?*

A. *He was 13 years old and one night I was over at his house and I don't know — I guess I was caught up in the moment. I sucked him and that was that.* That's the only thing, that's the only — [Emphasis added.]

During the suppression hearing, the prosecutor asked Appellant about the circumstances surrounding this confession:

Q. Did you freely, without coercion, without any reliance on promises, did you tell Charlie Winborn about the 13 year old child, about [M.D.]?

A. Officer Winborn was the first one to bring that up.

Q. He brought up [M.D.'s] name?

A. Yes, sir.

Q. Or asked you about children that you'd had sexual contact with?

A. We was talking about [M.C.] and just out of the blue, Officer Vaughn said, "Who's this [M.D.] kid?" And then that's when I told them about [M.D.]

Q. Because Jimmy Vaughn said something about who's this [M.D.] kid, that just compelled you to give a statement that you had performed oral sex on him?

A. I told them what had happened, but I'd also told them that that issue had been resolved between me and his father.

Q. But when he asked you that question, *you told him the truth, you had performed oral sex on a 13 year old child?*

A. *Yes.* [Emphasis added.]

Based on the totality of the circumstances surrounding the statement, along with Appellant's admissions, we conclude that any statements or promises of help made by the officers did not induce or influence Appellant into confessing about M.D. Each of the five excerpts challenged by Appellant were made in an attempt to investigate the crime against the other victim, M.C., for which Appellant never made any incriminating statements. Moreover, Appellant candidly admitted that his confession about M.D. was not actually in direct response to any pointed questioning, but was, instead, freely given after the officers merely brought up M.D.'s name. Appellant also admitted that the off-tape promise of help allegedly made by Officer Winborn did not influence his confession about M.D., because it was made *after* he had already confessed. Finally, Appellant admitted that he had told the truth about performing oral sex on M.D. We therefore affirm the trial court's ruling on the admissibility of the December 17, 2003, statement.

We likewise affirm the trial court's ruling pertaining to the January 8, 2004, interview, which the State used as evidence during the sentencing phase of Appellant's trial. Appellant's sole challenge to this interview concerns Officer Winborn's failure to advise him of his *Miranda* rights immediately prior to conducting the interview. The record demonstrates that Winborn arrested Appellant for the rape of M.D. at approximately 3:15 p.m. on January 7. Immediately upon taking him into custody, Winborn verbally advised Appellant of his *Miranda* rights. Appellant does not dispute this. The next day, January 8, at approximately 1:30 p.m., Winborn conducted an interview with Appellant at the jail. He did not, however, repeat the *Miranda* warnings at that time.

This court has held that there is no constitutional requirement that a suspect be warned of his *Miranda* rights each time he is questioned. *See Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002), *overruled on other grounds in Grillot*, 353 Ark. 294, 107 S.W.3d 136; *Bryant v. State*, 314 Ark. 130, 862 S.W.2d 215 (1993). There is likewise no mechanical formula for measuring the longest permissible interval between the last warning and the confession. *See Barnes v. State*, 281 Ark. 489, 665 S.W.2d 263 (1984); *Upton v. State*, 257 Ark. 424, 516 S.W.2d 904 (1974). *Miranda* warnings

need only be repeated when the circumstances have changed so seriously that the accused's answers are no longer voluntary, or the accused is no longer making a knowing and intelligent relinquishment or abandonment of his rights. *See Conner v. State*, 334 Ark. 457, 982 S.W.2d 655 (1998) (citing *Wyrick v. Fields*, 459 U.S. 42 (1982)). Important considerations are the length of time that has elapsed between the *Miranda* warnings and the confession and the number of prior warnings. *Id.* An additional consideration is whether the accused initiated the second interrogation. *Id.*

Here, the record shows that Appellant was advised of his *Miranda* rights approximately twenty-two hours prior to his confession. He had also previously been advised of his rights during the prior interview, which occurred less than one month earlier. Both times, he indicated that he understood his rights and agreed to waive them. Additionally, the record shows that Appellant had previous experience with the criminal justice system.

Appellant's suggestion that the lapse of time in and of itself required the *Miranda* warnings to be repeated is not supported by our case law. For example, in *Barnes*, 281 Ark. 489, 665 S.W.2d 263, this court held that a three-day lapse of time between the last *Miranda* warnings and the confession did not violate the appellant's constitutional rights. Similarly, this court upheld a two-day lapse in *Upton*, 257 Ark. 424, 516 S.W.2d 904, and a three- to four-day lapse in *O'Neal v. State*, 253 Ark. 574, 487 S.W.2d 618 (1972). In each of those cases, this court refused to set a bright-line rule about the passage of time from the last *Miranda* warning; instead, it determined the voluntariness of the confession in light of the totality of the circumstances. Viewing the totality of the circumstances in this case, we conclude that the interval of time between the last warning and the giving of the statement did not render Appellant's confession involuntary. We therefore affirm the trial court's denial of the motion to suppress.

### III. Comments During Voir Dire

Appellant argues that the trial court erred in permitting the prosecutor, Richard Garrett, to ask potential jurors about their feelings about pedophiles during *voir dire*. The record reflects the following:

> MR. GARRETT: . . . Do you think that there are people in this world who are sexual predators? Do you think

there are people in this world who like to prey on children? Do you think there's any cure for that?

Ms. LEMONS: Your Honor, we're going to object to that line of testimony [sic]. There's no evidence of that and he's misleading the jury.

THE COURT: Relevance?

MR. GARRETT: Pardon?

THE COURT: Relevance.

MR. GARRETT: I want to know — I certainly have a right to find out how the jury feels about pedophiles.

Ms. LEMONS: Your Honor, we're going to object to that.

Following the trial court's overruling of the objection, Mr. Garrett asked the panel "Do you think there's any cure for being somebody that likes to take advantage of children?"

On appeal, Appellant acknowledges our well-established law that the extent and scope of *voir dire* is left to the sound discretion of the trial court, and that the trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *See Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003); *Bader v. State*, 344 Ark. 241, 40 S.W.3d 738, *cert. denied*, 534 U.S. 826 (2001). Notwithstanding, he argues that it was an abuse of discretion to allow the prosecutor to question jurors about their feelings in regard to pedophiles because he has never been previously convicted of any sexual offense.

Appellant was charged with raping a twelve-year-old boy, which may certainly be construed as an act of taking advantage of or preying on children. Appellant has offered nothing in the way of legal authority and makes no convincing argument as to how the prosecutor's line of questioning would only be proper if Appellant had previously been convicted of a sexual offense against a child. This court has held on occasions too numerous to count that we will not consider an argument when the appellant presents no citation to authority or convincing argument in its

support, and it is not apparent without further research that the argument is well taken. *See, e.g., Polston v. State*, 360 Ark. 317, 201 S.W.3d 406 (2005); *Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004); *Stivers v. State*, 354 Ark. 140, 118 S.W.3d 558 (2003). Accordingly, we affirm the trial court's ruling on this point.

*IV. Refusal to Instruct on Lesser Offense*

Appellant argues that the trial court erred in refusing to instruct the jury on the lesser offense of sexual assault in the second degree, pursuant to Ark. Code Ann. § 5-14-125 (Supp. 2005), which pertains to sexual contact. The trial court denied the instruction on the ground that there was no rational basis in the evidence for the jury to conclude that anything other than oral sex had occurred between Appellant and the victim.

This court has repeatedly held that it is reversible error to refuse to instruct on a lesser-included offense when there is the slightest evidence to support the instruction. *See, e.g., McDuffy v. State*, 359 Ark. 180, 196 S.W.3d 12 (2004); *Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004); *Wyles v. State*, 357 Ark. 530, 182 S.W.3d 142 (2004). However, we will affirm a trial court's decision not to give an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Id.* Once an offense is determined to be a lesser-included offense, the circuit court is only obligated to instruct the jury on that offense if there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. *McDuffy*, 359 Ark. 180, 196 S.W.3d 12 (citing Ark. Code Ann. § 5-1-110(c) (Repl. 1997)).

In the present case, Appellant did not proffer an instruction for sexual assault in the second degree, which may be proven in several different ways. This is fatal to his argument, as this court has held that when an appellant seeks reversal based on the failure to instruct the jury as requested, he or she must present a record showing a proffer of the requested instruction, and the failure to do so precludes this court from considering the issue on appeal. *See Pratt*, 359 Ark. 16, 194 S.W.3d 183; *State v. Hagan-Sherwin*, 356 Ark. 597, 158 S.W.3d 156 (2004). We thus affirm on this point.

### V. Admission of Evidence in Sentencing

For his final point on appeal, Appellant asserts that the trial court erred in allowing the State to admit evidence during sentencing that he raped another boy *subsequent* to his rape of M.D. The trial court allowed the evidence on the ground that "it certainly is relevant to his sentencing to indicate that he continues to do that to other young boys." Appellant argues that the evidence was unfairly prejudicial. He argues further that the way the evidence was presented, through Officer Winborn, denied him his constitutional rights to due process and confrontation of the witness against him. We disagree.

This court has recently determined that proof of subsequent criminal activity is admissible during the sentencing phase of a trial. *See Crawford v. State*, 362 Ark. 301, 208 S.W.3d 146 (2005). In *Crawford*, the appellant was convicted of possessing drug paraphernalia with the intent to manufacture methamphetamine. During sentencing, the prosecutor presented testimony from a police officer that on two separate occasions *subsequent to his arrest*, the appellant had been found in possession of materials to make methamphetamine. On appeal, Crawford argued that such evidence was not admissible under Ark. Code Ann. § 16-97-103 (Supp. 2003). This court disagreed and held that evidence of the appellant's subsequent drug activity provided proof of his character and was relevant to the jury's determination of an appropriate sentence. This court also held that the evidence was relevant as an aggravating circumstance, in that it showed the appellant's propensity to continue to engage in similar activity in the future.

Here, the record demonstrates that during sentencing Officer Winborn testified that Appellant confessed to him in the January 8, 2004, interview that he performed oral sex on M.C., who was six years old at the time, and then had the child perform oral sex on him. This evidence of Appellant's having engaged in deviate sexual activity with another young boy was relevant to Appellant's character and to his propensity to continue to engage in similar activity in the future. Under our holding in *Crawford*, it is irrelevant that the crime against M.C. occurred subsequent to the crime against M.D. The evidence was clearly relevant to sentencing, and the trial court did not abuse its discretion in allowing it.

We reject Appellant's argument that the manner in which the evidence was presented, through the interviewing officer, somehow violated his constitutional rights to due process and to confront the witness against him. In his brief on appeal, Appellant does not explain how his constitutional rights were violated under these circumstances, nor does he offer any legal authority in support. As stated above, we will not reach the merits of an argument on appeal, even a constitutional argument, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Polston*, 360 Ark. 317, 201 S.W.3d 406; *Hathcock*, 357 Ark. 563, 182 S.W.3d 152; *Stivers*, 354 Ark. 140, 118 S.W.3d 558. We thus affirm on this point.

*Rule 4-3(h)*

Because Appellant received a sentence of life imprisonment, the record in this case has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h) for adverse rulings objected to by him but not argued on appeal. No reversible errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.