2012 Ark. 388

**James T. HUFF, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–1071.**

Supreme Court of Arkansas.

Oct. 11, 2012.

Jack Lassiter, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Christian Harris, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Justice.

A Pulaski County jury convicted appellant, James T. Huff, of aggravated residential burglary, aggravated robbery, kidnapping, terroristic threatening in the first degree, and battery in the second degree. Huff was sentenced to life imprisonment without parole for kidnapping, to forty years for the charge of aggravated residential burglary, to forty years for aggravated robbery, to six years for terroristic threatening in the first degree, and to six years for battery in the second degree. The judge ordered that all terms be served consecutively. Our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(2) (2012). Huff appeals the trial court's decision on two points. First, Huff appeals the trial court's denial of his motion for a directed verdict to reduce the kidnapping charge from a Class Y felony to a Class B felony. Second, Huff appeals the trial court's admission of testimony concerning Huff's previous uncharged conduct. We affirm.

On May 16, 2010, while cooking dinner at her home on Shamrock street in Little Rock, Haleigh Millwee heard the doorbell ring. Millwee answered the door, and Huff was standing at the door holding a dog. Huff asked Millwee if the dog was hers. Millwee responded that it was not, and Huff stated he could not read the dog's identification tag. He asked Millwee to decipher the information on the tag. Millwee opened the glass door enough to take a look at the tag and told Huff she could not read it either. Huff then forced his way into Millwee's home.

Huff, who was wearing a cream-colored latex glove at the time, punched Millwee in the stomach and told her he was there to take money and goods. While holding Millwee down with a knee, Huff handcuffed and blindfolded her. Huff then used zip ties to tie Millwee's ankles together and tied her ankles to her hands. When Huff left the room to search the house, Millwee struggled to get free, but Huff restrained her again. Huff punched Millwee repeatedly in the head and stomach. At one point, Huff threatened to cut Millwee's eyes out with a box cutter. Huff also asked Millwee where her pantyhose drawer was. After Millwee attempted to escape, Huff beat Millwee into unconsciousness. During this time, Millwee saw Huff carrying a red bag she owned. Police would later find that this bag was packed with Millwee's underwear and shoes.

Next, Huff, in an attempt to take Millwee out of the home, tried to put flip-flops on Millwee. He was unsuccessful, so Huff

put house shoes on Millwee and released the zip ties around her ankles in order to move Millwee. Huff held a box cutter against Millwee's throat and choked her until she lost consciousness again. Huff then put a gag in Millwee's mouth and started to pull Millwee out the door toward his vehicle, which was parked in the driveway. Millwee continued to resist, but Huff knocked Millwee out yet again by knocking her head against a concrete path.

At this time, Greg Alagood, who lived nearby, heard Millwee's cries and went outside. Alagood witnessed Huff kicking Millwee while she lay on the ground. Alagood told Huff to stop, and Huff responded that he was taking Millwee to rehabilitation and started dragging her by the hair toward his vehicle. Millwee continued to fight, scratching and holding on to things, as Huff tried to place her into his car. Alagood went back inside his house to call the police. At this point, Huff released Millwee, took off the handcuffs, and sped off. Millwee had to roll away from the car to avoid being run over by it.

Alagood and his wife took Millwee into their home until the police arrived. Millwee was taken to the hospital for treatment. At the hospital, Audra Head, a registered nurse, noted that Millwee suffered bruising and lacerations from a box cutter. Head collected DNA samples from tissue under Millwee's fingernails. Later, Millwee identified a photograph of Huff as the attacker and gave a sample of her DNA to police.

After obtaining a search warrant and an arrest warrant, Little Rock police arrested Huff. When Huff arrived at the police department, pictures of his body were taken that showed he had recently received scratches. Detective Robert Martin obtained a DNA sample from Huff. The police conducted a search of Huff's home and discovered, among other things, latex gloves, zip ties, a red bandana, a gag, a box cutter, a pair of tennis shoes, and a shirt with what appeared to be blood on it. DNA tests of Millwee's fingernail scrapings did not exclude Huff. The DNA tests of samples taken from Huff's shoes indicated that they originated from Millwee.

During trial on April 28, 2011, Huff moved for a directed verdict on the kidnapping charge arguing that, if found guilty of kidnapping, he could be found guilty of only a Class B felony. Kidnapping is normally a Class Y felony but is reduced to a Class B felony if the defendant shows by a preponderance of the evidence that he voluntarily released the person restrained, alive and in a safe place prior to trial. Ark.Code Ann. § 5–11–102(b) (Repl.2006). Huff argued that, because Millwee was released before Huff drove away, the kidnapping charge should be reduced to a Class B felony. The trial court denied his motion. Huff was convicted of kidnapping as a Class Y felony.

Before trial, the State filed a motion in limine to allow character evidence and aggravating circumstances at the sentencing phase of trial. Specifically, the State sought to offer evidence of similar conduct by Huff through the testimony of three witnesses living in the Leawood neighborhood: Kim May, Angel Lee Burnett, and Alison Rose. The Leawood neighborhood is adjacent to Shamrock street. Huff asserted that the testimony was prohibited because the incidents were not factually similar to the facts of this case and none involved an abduction. The trial court allowed the testimony of the three witnesses.

During sentencing, the three witnesses provided testimony regarding the prior incidents involving Huff. Each incident occurred in close proximity to Millwee's home. First, May testified that in 2006, Huff came to her house claiming he had a work order to repair the phones. After

May went back inside to check the phones, Huff followed her into her home without invitation or permission. May's daughter and granddaughter were there at the time. After May told Huff he had come to the wrong house, Huff told May that he thought her dog was dead and then left.

Second, Burnett testified that in 2002, upon arriving at home, she found Huff in her garage. Burnett testified that her fiancé chased Huff away. Burnett later noticed that some of her underwear was missing from her home.

Third, Rose testified that she had known Huff and his wife, Debbie Huff, as neighbors for several years. Rose testified that in 2009, Huff rang her doorbell during the night. Huff told Rose that something was burning at the bottom of a hill nearby. After telling her husband to get dressed, Rose noticed that Huff was wearing a latex glove and holding a gun. Rose managed to take the gun away from Huff, and then Rose's husband took the gun. After Rose went back inside, Huff threatened to attack Rose's husband if he did not give him the gun back. Police responded to the scene, but Huff was never charged. The police later told Rose the gun was a BB or pellet gun.

■ On appeal, Huff challenges the trial court's denial of his motion for a directed verdict on the kidnapping charge and the trial court's admission of testimony, during the sentencing phase of the trial, of May, Burnett and Rose concerning their encounters with Huff. We are required to consider challenges to the sufficiency of evidence prior to reviewing any asserted trial errors. *Williams v. State*, 363 Ark. 395, 401, 214 S.W.3d 829, 832 (2005). A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* On appeal, this court views the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Id.*

■ Arkansas Code Annotated section 5–11–102(b)(1) (Repl.2006) provides that kidnapping is a Class Y felony, however, kidnapping may be reduced to a Class B felony if the defendant shows by a preponderance of the evidence that he voluntarily released the person alive and in a safe place prior to trial. Ark.Code Ann. § 5–11–102(b)(2). A kidnapping victim has not been voluntarily released when the victim escapes through her own resistance. *Wells v. State*, 303 Ark. 471, 798 S.W.2d 61 (1990). A victim has not been voluntarily released if the release was caused by the defendant's attempt to escape apprehension. *Woods v. State*, 302 Ark. 512, 790 S.W.2d 892 (1990). In determining what constitutes a safe place, the familiarity that the victim has with the place is one factor to be considered. *Ratliff v. State*, 359 Ark. 479, 199 S.W.3d 79 (2004). However, a place is not safe merely because it is familiar to the victim. *Whitt v. State*, 281 Ark. 466, 664 S.W.2d 876 (1984) (victim left in the trunk of her car was not left in a safe place).

■ Huff argues that he voluntarily released Millwee in a safe place when he took the handcuffs off of her and left her on her front lawn, a place familiar to her. Millwee testified that Huff took off the handcuffs as Huff was attempting to get Millwee into the car. At that point, Alagood also attempted to intervene and then left to call the police. Millwee stated that she repeatedly resisted and fought Huff by

scratching him and holding onto things to prevent him from getting her into the car. Millwee also testified that she had to roll away from the car to avoid being run over as Huff drove away. This evidence was sufficient for the jury to find that ⌊₇Huff only released Millwee because of her resistance and his attempt to escape apprehension by the police. Additionally, the evidence was sufficient to for the jury to find that leaving Millwee in the path of his vehicle was not a safe place. Because the evidence was sufficient for the jury to find that Huff did not voluntarily release Millwee in a safe place, the trial court did not err in denying Huff's motion for a directed verdict.

■ For Huff's next point on appeal, Huff asserts that the trial court erred in allowing the similar-conduct testimony during the sentencing phase of the trial on the basis that such testimony was irrelevant and extremely prejudicial. The trial court has wide discretion in admitting evidence, and its discretion will not be reversed without an abuse of discretion. *Hill v. State*, 318 Ark. 408, 415, 887 S.W.2d 275, 278 (1994).

■ Arkansas Code Annotated section 16–97–103(5) and (6)(Repl.2006), provides that relevant character evidence and aggravating and mitigating circumstances considered inadmissible during the guilt phase of a criminal trial may be admissible during the sentencing phase. *Crawford v. State*, 362 Ark. 301, 306, 208 S.W.3d 146, 149 (2005). Evidence of uncharged criminal conduct can be admissible at the penalty phase of a trial if it is relevant evidence of the defendant's character or as evidence of an aggravating circumstance. *Brown v. State*, 2010 Ark. 420, 378 S.W.3d 66. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401. (2012)

■ During the sentencing phase of the trial, the testimony of Burnett, May and Rose was admitted over Huff's objection. Burnett's testimony concerned another instance of Huff's ⌊₈breaking into a woman's home. Additionally, Burnett's testimony about missing underwear was similar to the assault on Millwee because of evidence presented at trial that Huff was preparing to take underwear from Millwee as well. May's testimony about Huff using deceptive tactics to gain entry to May's home were similar to the tactics used to gain access to Millwee's home. Rose's testimony provided another example of Huff using deceit to attempt to isolate a woman at her home. Huff temporarily isolated Rose from her husband by telling both of them that something was burning down the street. Additionally, Huff was wearing a latex glove during the incident, just as he was during the attack on Millwee. Furthermore, his use of a pellet gun and his threat to attack Rose's husband are both relevant to show Huff's character under Arkansas Code Annotated section 16–97–103(5).

Huff argues that none of these incidents are relevant because none of them involved an abduction. While it is true that none of the incidents involved a kidnapping, each incident shares at least one common element with the attack on Millwee, thus demonstrating that Huff's attack on Millwee was not an isolated incident. Given the similarities between these events, we cannot say that the trial court abused its discretion in admitting the testimony at the sentencing phase of the trial.

Pursuant to Ark. Sup.Ct. R. 4–3(i) (2012), the record has been examined for all objections, motions, and requests made by either party that were decided adverse-

ly to Huff, and no prejudicial error has been found.

Affirmed.