Cite as 2022 Ark. App. 329

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-21-595

| | | |
|---|---|---|
| FLANDO MONTGOMERY | | Opinion Delivered September 14, 2022 |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | | [NO. 16JCR-19-171] |
| STATE OF ARKANSAS | | HONORABLE RANDY F. PHILHOURS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Flando Montgomery was convicted by a Craighead County jury of one count of first-degree murder; two counts of first-degree attempted murder; one count of aggravated robbery; one count of first-degree battery; and six counts of aggravated assault. Each of these charges carried a firearm enhancement, and all but the aggravated-robbery charge carried an enhancement for being committed in the presence of a child. On appeal, Flando challenges the admission of a custodial statement; the admission of body-camera footage; and the length of his sentence. We affirm.

On January 2, 2019, Jonesboro police responded to a residence regarding a shooting. Four victims in the home sustained multiple gunshot wounds, including sixteen-year-old Malcom Jemison, who died from his injuries. Three others were on the scene but unharmed, including a one-year-old infant. Testimony at trial established that on January 2 around 5:00

p.m., Antonio Funches and Taurus Bedford went to the residence to buy marijuana. The transaction took place, and they left about fifteen minutes later. Taurus then returned some time later. Malcom was in the living room playing a video game and keeping an eye on the baby, who was sleeping on the sofa.  Quenterius Finch (one of the victims) opened the door for Taurus, and they spoke for a moment. Taurus apparently turned as though to leave but opened the door for Flando. Flando came in holding two guns. Taurus also pulled out a gun. Flando moved to the living room, and Taurus began to rob Quenterius. Three shots were fired in the living room, and then Taurus shot Quenterius. Taurus and Flando continued shooting into the kitchen, unloading their clips.

When police arrived, they encountered several individuals who had been shot and began administering aid. Body-camera video from the responding officers was admitted into evidence and played for the jury. Malcom was pronounced dead at the hospital. Three others were hospitalized with gunshot wounds. After investigation, Flando was considered a suspect.

Flando turned himself in at the Jonesboro police station on January 5. He read and signed a form indicating he understood his *Miranda* rights and agreed to a recorded interview. Detectives Brooks and Oldham interviewed Flando for about two and a half hours. Flando confessed his participation in the shootings. Specifically, he stated, "When I turned around, the gun just went off." Flando was interviewed again ten days later. During that interview, he again confirmed that he took some part in the shooting. ("[M]y cousin . . . how

2

he said it, it was like somebody was pointing a gun at me, so, like, by me being so nervous, when I turned around, I had like fired the gun the first time and just kept shooting.")

Flando was convicted of one count each of first-degree murder, aggravated robbery, and first-degree battery, two counts of attempted first-degree murder, and six counts of aggravated assault. The jury also found that each offense was committed with a firearm and that the first-degree murder, two counts of attempted first-degree murder, and all but the aggravated robbery and battery were committed in the presence of a child and recommended sentences for those enhancements as well. The jury recommended that the sentences for the underlying felonies run concurrently and the enhancements to follow consecutively with the stipulation that all of the child and firearm enhancements would run together, for an aggregate sentence of fifty-five years.

On August 4, 2021, the circuit court entered a sentencing order that listed the time to be served as 480 months but was silent as to how the sentences were to be served. On August 9, 2021, an amended sentencing order was entered listing the total time to be served as 660 months, indicating that the two enhancement provisions found by the jury were to be served consecutively to the sentences for the respective underlying felonies.

On appeal, Flando challenges the admissibility of his confession to Detectives Brooks and Oldham; the circuit court's modification of his sentence; and the admission of body-camera video from the officers responding to the scene of the shooting.

Flando's first point argues that the confession he made to Detectives Brooks and Oldham was based on an unambiguous false promise of leniency and was not the product

of his free will. The statements at issue were made by Sergeant Oldham, the first one being

as follows:

> Okay. Okay. Here's one of the things, once again, most of the questions we're asking you, man, we know the answers to -- Flando, no, dude, listen to me. Don't -- the truth is the best way you're going to go with this. I promise you, man. I promise ya. I'll do everything I can to help you out, but you've got to be straight with us and right now you're giving us not whole truths.

And later in the interview, Sergeant Oldham said:

> I understand that, but you -- y'all go there, and you're on a mission to rob somebody. All right. I'm telling you right now when that gun kit comes back, you know what it's going to show me . . . [a]nd it's going to show that you killed this young man right here.

> That's what it's going to show. When you -- you can look it however you want to, whatever light you want to, and I'll tell you right now me and Detective Brooks right now go to the prosecutor's office with you, I'll stand beside you and tell you he didn't want to do that. He didn't mean to do that. He wishes it would have never happened, but it happened. All right. But right now what you're telling us right now is I don't give a shit that I killed this kid. That's what you're telling us right now.

Flando contends these statements are unambiguous false promises of leniency and

therefore rendered his statement involuntary and inadmissible. He argues, alternatively, that

the statements were ambiguous and that the court erred in letting his confession into

evidence after conducting the appropriate analysis.

The State has the burden of demonstrating by a preponderance of the evidence that

custodial statements are given voluntarily and are knowingly and intelligently made. *See, e.g.*,

*Jones v. State*, 344 Ark. 682, 687, 42 S.W.3d 536, 540 (2001). In reviewing the circuit court's

determination of voluntariness, we review the totality of the circumstances; we will reverse

only if the circuit court's decision was clearly erroneous. *Id.* We have adopted a two-stage

4

inquiry for instances in which defendants allege that false promises by police officers induced their custodial statements. First, we look to the nature of the officer's statement. If the officer made an unambiguous, false promise of leniency, then the statement elicited from the defendant is automatically inadmissible; if the officer made no promises of leniency, the statement is admissible. *See Pyles v. State*, 329 Ark. 73, 77–78, 947 S.W.2d 754, 756 (1997). If the officer's statements were of an ambiguous nature, however, we proceed to the second step of the analysis to examine the defendant's vulnerability along a number of dimensions: age, education, intelligence, length of interrogation, experience with the justice system, and the delay between the defendant receiving *Miranda* warnings and the statement. *See Clark v. State*, 374 Ark. 292, 300, 287 S.W.3d 567, 573 (2008).

The statements in this case are similar to those made in *Goodwin v. State*, 373 Ark. 53, 62, 281 S.W.3d 258, 266 (2008). In *Goodwin*, the officers told the defendant that it was "best for [the defendant] to be truthful" and that they would convey news of the defendant's honesty to the prosecutor. The supreme court held that such general promises were, at most, ambiguous. Likewise, in *Kellon v. State*, 2018 Ark. 46, at 2–3, 538 S.W.3d 206, 207, statements from police that the officer could "go and tell the judge, this man came in here. He was truthful. He was trying to be a provider for his family. He was trying to help . . . I can get on the stand and say that versus saying, he came up in here and he flat out lied," were similarly held to be ambiguous.

Because the statements by Officer Oldham were plausibly ambiguous, we then take the second step of determining whether Flando was particularly vulnerable to having his will

overborne. There are four factors to be considered in determining a defendant's vulnerability: "1) the age, education, and intelligence of the accused; 2) how long it took to obtain the statement; 3) the defendant's experience, if any, with the criminal-justice system; and 4) the delay between the *Miranda* warnings and the confession." *Brown v. State*, 354 Ark. 30, 34, 117 S.W.3d 598, 600 (2003).

The object of the rule is not to exclude a confession of truth, however, but to avoid the possibility of a confession of guilt from one who is, in fact, innocent. *Williams v. State*, 363 Ark. 395, 405, 214 S.W.3d 829, 834 (2005). A person seeking to have a statement excluded on the basis that a false promise was made must show that the confession induced by the false promise was untrue. *Id.*

At the suppression hearing, the circuit court concluded the statements were ambiguous and proceeded to determine Flando's vulnerability. It made the factual finding that Flando appeared to be lucid and not under the influence of intoxicants. It found that the interview was not excessive in length. Flando was nineteen years old with twelve years of education and seemed to be of average intelligence. The tone of the interview was "calm," and the detectives made sure to offer Flando water and even found him a space heater when he said he was cold. The circuit court found that the surrounding circumstances did not lead it to believe that Flando's will had been overborne, and having made a de novo review, these findings are not clearly erroneous.

Flando's second point argues that the circuit court's pronouncement of sentence from the bench immediately following the sentencing phase of the trial superseded its

6

subsequent entry of judgment. Flando contends that the court "erred in finding that it did not have the authority to impose a sentence of forty years."

The jury returned verdict forms that fixed Flando's sentence as follows: forty years for the first-degree-murder and aggravated-robbery convictions, thirty years for the two counts of attempted first-degree murder, a twenty-year term for the first-degree-battery conviction, and six-year terms of imprisonment for each of the six aggravated-assault convictions. The jury further recommended that both enhancement provisions—the commission of an offense with the use of a firearm and the commission of an offense in the presence of a child—be served consecutively to the underlying offenses and consecutively to each other. The jury's sentence resulted in a fifty-five-year aggregate sentence.

Following the reading of the jury's sentencing recommendation, the circuit court addressed the jury as follows:

> I was a part-time prosecutor also in private practice in Greene County from 1985 to 2008 when I took the bench, and I have predominantly had a criminal docket every year since then. I have literally tried hundreds of these type cases, and I – so my view is probably a little different than yours, and I do not want to insult you by not following your recommendation precisely, but that is my prerogative. So it's my intention that [Flando] is 20- or 21-years old. Forty years keeps him in prison for 28 years at a minimum. He would be a 48-year-old man when he gets out, so it's my intention for the sentences to run concurrent across the board so he is sentenced to a total of 40 years in the Arkansas Department of Corrections, so that will be the order and judgment of the Court.

On July 2, 2021, prior to a sentencing order being entered in the case, the State filed a motion requesting that the circuit court impose the jury's fixed sentence and recommended concurrent/consecutive disposition. On July 26, Flando responded, noting that the circuit

7

court "had indicated that it would impose a sentence of 40 years." The circuit court did not enter a written order regarding the disposition of the State's motion.

On August 4, a sentencing order was entered that set out prison terms identical to those fixed by the jury, but the sentencing order did not indicate whether sentences for the underlying offenses were to be served consecutively or concurrently; the aggregate sentence to be served was 480 months. On August 9, the circuit court entered an amended sentencing order. The amended sentencing order indicated that the aggregate sentence to be served was 660 months.

In Arkansas, sentencing is entirely a matter of statute; sentencing shall not be other than in accordance with the statute in effect at the time of the commission of the crime. *Hale v. Hobbs*, 2014 Ark. 405, at 3–4, 443 S.W.3d 533, 535. A circuit court further has the power in all cases of conviction to reduce the extent or duration of the punishment assessed by a jury so that the punishment is not in any case reduced below the limit prescribed by law in such cases if the conviction is proper and the punishment assessed is greater than ought to be inflicted under the circumstances of the case. Ark. Code Ann. § 16-90-107(e) (Repl. 2016).

Here, the circuit court thought to impose a sentence slightly reduced from the one set by the jury but failed to impose the sentencing enhancements, which were required to run consecutively to the underlying felonies. So, while the circuit court pronounced from the bench that the sentences be served "concurrent across the board," it was unable to do so due to the nature of the enhancements. The final amended sentencing order provided that all of the underlying felonies were, under Ark. Code Ann. § 5-4-403(a) (Repl. 2016), served

8

concurrently, constituting a forty-year aggregate sentence. Added to the sentence for the underlying felonies was the five-year sentence under the firearm-enhancement provision, (Ark. Code Ann. § 16-90-120(b) (Repl. 2016)), and the ten-year sentence for the presence-of-a-child enhancement provision (Ark. Code Ann. § 5-4-702(d) (Repl. 2016). This resulted in a legal, fifty-five-year aggregate sentence. When there are differences between the oral ruling and the written order, the circuit court's written order controls. *Ellis v. State*, 2019 Ark. 286, at 6, 585 S.W.3d 661, 665. The circuit court is not constrained from modifying its ruling from the bench. The sentence is legal. On this point, we affirm.

Flando's final point claims that the body-camera footage by police officers who responded to the scene and attended to the various victims was inadmissible pursuant to Arkansas Rule of Evidence 403 (2021).

Arkansas Rule of Evidence 402 (2021) provides that "[a]ll relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible." Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

It is well settled that matters regarding the admissibility of evidence are left to the sound discretion of the circuit court, and rulings in this regard will not be reversed absent an abuse of discretion. *Jackson v. State*, 2018 Ark. App. 330, at 9, 552 S.W.3d 55, 60. Abuse

of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*

Regarding the type of evidence considered here, video evidence is admissible if it is relevant, helpful to the jury, and not prejudicial. *Lard v. State*, 2014 Ark. 1, at 20, 431 S.W.3d 249, 264. The same requirements for the admission of photographs apply to the admission of video evidence. *Id.*

Flando argues that the images and description from the officer's body camera of the victim who was shot in the head was so unfairly prejudicial that it outweighed any probative value. Here, the video footage admitted into evidence corroborated the testimony of the officers on the scene. It showed the condition of the victims, where they were found, and the severity of the wounds.

Because videos and photographs are judged by similar standards, it holds true that the mere fact that a video is inflammatory or cumulative is not, standing alone, sufficient reason to exclude it. *Id.* Even the most gruesome depictions may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id.* Tellingly, the officers' body-camera video showed the jury exactly what the police officers encountered at the scene and what they did there once they arrived, as each of them testified. Even identifying this evidence as cumulative, however, does not render it inadmissible.

Evidence that is merely cumulative is not prejudicial, and the State is entitled to prove its case as conclusively as possible. *Reid v. State*, 2019 Ark. 363, at 9, 588 S.W.3d 725, 732.

Affirmed.

HARRISON, C.J., and WHITEAKER, J., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.